UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| CECIL LOGAN DIXON, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5: 15-269-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| CAROLYN W. COLVIN, | ) | **MEMORANDUM OPINION** |
| Acting Commissioner of Social Security, | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of cross-motions for summary judgment filed by Plaintiff Cecil Dixon (hereafter, "Dixon" or "the Claimant") and Defendant Carolyn W. Colvin, Acting Commissioner of Social Security ("the Commissioner"). [Record Nos. 9, 10] Dixon argues that the Administrative Law Judge ("ALJ") erred in concluding that he is not entitled to a period of supplemental security income ("SSI"). However, the Commissioner contends that the ALJ's decision is supported by substantial evidence and should be affirmed. For the reasons discussed below, remand for further proceedings is necessary. Neither party is entitled to summary judgment at this time.

**I.**

On October 23, 2012, Dixon filed an application for supplemental security income under Title XVI of the Social Security Act ("the Act"). [Administrative Transcript, "Tr.," p. 159] He alleged a disability beginning August 1, 2010. [*Id.*] Dixon, along with attorney Rodney Davis and vocational expert ("VE") Joyce Forrest, appeared before ALJ Ronald M.

- 1 -

Kayser on February 4, 2014, for an administrative hearing.  [*Id.*, p. 26]  On March 28, 2014, ALJ Kayser found that Dixon was not disabled under section 1614(a)(3)(A) of the Act.  [*Id.*, p. 22]  Dixon appealed the ALJ's determination to the Social Security Administration's Appeals Council.  However, the council declined the Claimant's request for review.  [*Id.*, p. 1]

Dixon was 33 years-old when his alleged disability began, and 37 years-old at the time of the ALJ's decision.  [Tr., pp. 22, 159]  He has a twelfth-grade education and previously worked as a night watchman, a maintenance worker at a hotel, and a laborer in a tobacco warehouse.  [*Id.*, pp. 191−93]  After considering the testimony presented during the administrative hearing and reviewing the record, the ALJ concluded that Dixon suffers from five severe impairments: (i) degenerative joint disease ("DJD") in the left knee; (ii) diabetes mellitus; (iii) obesity; (iv) right-sided disc herniation at L5-S1 with a disc fragment compressing the right S1 root; and (v) tendonitis left shoulder.  [*Id.*, p. 18]

Notwithstanding the impairments identified above, the ALJ determined that Dixon maintained the residual functional capacity ("RFC") to perform light work, with the following constraints:

> he can only occasionally push and pull with his left upper extremity and lower extremities; cannot climb ropes, scaffolds and ladders; can frequently climb ramps and stairs, balance, kneel, crouch and crawl; is limited in his ability to work where he would have whole body vibration or be around hazardous machinery and heights; and can frequently reach overhead with his left upper extremity.

[Tr., p. 20]

- 2 -

After considering Dixon's age, education, work experience, and RFC, ALJ Kayser concluded that the Claimant could perform a significant number of jobs in the national economy as a night watchman.  [*Id.*, p. 21]  As a result, the ALJ determined that Dixon was not disabled from August 1, 2010, through the date of the administrative hearing.  [*Id.*, p. 22]

## II.

Under the Act, a "disability" is defined as "the inability to engage in 'substantial gainful activity,' because of a medically determinable physical or mental impairment of at least one year's expected duration."  *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007) (internal citation omitted).  A claimant's Social Security disability determination is made by an ALJ in accordance with "a five-step 'sequential evaluation process.'"  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006) (en banc) (quoting 20 C.F.R. § 404.1520(a)(4)); *see also* 20 C.F.R. § 416.920(a)(4).  If the claimant satisfies the first four steps of the process, the burden shifts to the Commissioner with respect to the fifth step.  *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003); *Cruse*, 502 F.3d at 545.

A claimant must first demonstrate that he is not engaged in substantial gainful employment at the time of the disability application.  20 C.F.R. § 416.920(b).  Second, the claimant must show that he suffers from a severe impairment or combination of impairments.  20 C.F.R. § 416.920(c).  Third, if the claimant is not engaged in substantial gainful employment and has a severe impairment which is expected to last for at least twelve months and which meets or equals a listed impairment, he will be considered disabled without regard to age, education, and work experience.  20 C.F.R. § 416.920(d).  Fourth, if the Commissioner cannot make a determination of disability based on medical evaluations and

- 3 -

current work activity and the claimant has a severe impairment, the Commissioner will then review the claimant's RFC and relevant past work to determine whether he can perform his past work.  If he can, he is not disabled.  20 C.F.R. § 416.920(f).

Under the fifth step of the analysis, if the claimant's impairments prevent him from doing past work, the Commissioner will consider his RFC, age, education, and past work experience to determine whether he can perform other work.  If he cannot perform other work, the Commissioner will find the claimant disabled.  20 C.F.R. § 416.920(g).  The Commissioner has the burden of proof only on "'the fifth step, proving that there is work available in the economy that the claimant can perform.'"  *White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 785 (6th Cir. 2009) (quoting *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999)).

Judicial review of the denial of a claim for Social Security benefits is limited to determining whether the ALJ's findings are supported by substantial evidence and whether the correct legal standards were applied.  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).  The substantial-evidence standard presupposes that there is a zone of choice within which decision makers can go either way, without interference from the court. *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006).  Substantial evidence is such relevant evidence as a reasonable mind might accept as sufficient to support the conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).

If supported by substantial evidence, the Commissioner's decision must be affirmed even if the Court would decide the case differently and even if the claimant's position is also

- 4 -

supported by substantial evidence. *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007); *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007); *Longworth v. Comm'r of Soc. Sec. Admin.*, 402 F.3d 591, 595 (6th Cir. 2005); *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993).   In other words, the Commissioner's findings are conclusive if they are supported by substantial evidence.  42 U.S.C. § 405(g).

### III.

Dixon claims that the ALJ erred in concluding that his anxiety is not a "severe" impairment.  [Record No. 9, p. 6]  Additionally, he contends that the ALJ improperly evaluated consultative examiner Dr. Kathleen Monderewicz's opinion in making his RFC determination.  [*Id.*, p. 9]  Consequently, Dixon argues that substantial evidence does not support the ALJ's RFC finding and that the ALJ erred in determining that he can perform his past work as a night watchman.  [*Id.*, p. 11]

#### A.     Additional Severe Impairment

Dixon first argues that the ALJ erred by failing to classify his anxiety as "severe." *See* 20 C.F.R. § 416.920(c).   First, he alleges that the ALJ improperly discounted consultative examiner Dr. David Atcher's opinion regarding the limitations imposed by the anxiety on Dixon's ability to function in the workplace.  [Record No. 9, p. 7]  Second, Dixon asserts that ALJ Kayser failed to reference adverse findings in determining that the anxiety was non-severe.  [*Id.*, p. 8]

It is the claimant's burden to prove the severity of his impairments at the second step of the sequential evaluation process.  *See Her*, 203 F.3d at 391.   "An impairment or combination of impairments is not severe if it does not significantly limit [a claimant's]

- 5 -

physical or mental ability to do basic work activities," which are the "abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.921(a), (b). The Sixth Circuit has held that "the severity determination is 'a *de minimis* hurdle in the disability determination process.'" *Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008) (quoting *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988)); *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 190 (6th Cir. 2009) (involving request for supplemental security income). "[A]n impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education and experience." *Simpson*, 344 F. App'x at 190 (quoting *Rogers*, 486 F.3d at 243 n.2). The mere diagnosis of a condition does not thereby establish its severity. *Higgs*, 880 F.2d at 863.

Once step two is cleared by determining that some severe impairments exist, the ALJ must then consider a claimant's "severe and nonsevere impairments in the subsequent steps." *McGlothin v. Comm'r of Soc. Sec.*, 299 F. App'x 516, 522 (6th Cir. 2008); S.S.R. 96-8p, 1996 WL 374184, at *5 (July 2, 1996). "The fact that some of [a claimant's] impairments were not deemed to be severe at step two is therefore legally irrelevant." *Anthony*, 266 F. App'x at 457; *see also McGlothin*, 299 F. App'x at 522 (involving SSI).

At step two, the ALJ determined that Dixon suffered from several severe impairments. [Tr., p. 18] However, he did not evaluate the effect of Dixon's mental impairments on his RFC. Although the ALJ indicates that he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence" in determining the Claimant's RFC, such boilerplate language is insufficient evidence that he considered the mental impairments in the RFC determination.

*See Katona v. Comm'r of Soc. Sec.*, No. 14-CV-10417, 2015 WL 871617, *6 n.3 (E.D. Mich. Feb. 27, 2015).  [*Id.*, p. 20]  Because the ALJ failed to consider Dixon's mental impairments in the RFC finding, any potential error in classifying his anxiety as non-severe may be reversible.  *See id.* at *5; *see also Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 577 (6th Cir. 2009); *Fisk v. Astrue*, 253 F. App'x 580, 583–84 (6th Cir. 2007).  Therefore, the Court will analyze the ALJ's severity determination.

Regarding the ALJ's determination that Dixon's anxiety was non-severe,[1] Dixon points to Dr. Atcher's opinion, where he diagnosed Dixon with borderline Intelligence Quotient ("I.Q.") and generalized anxiety disorder.  [Record No. 9, p. 7, *referring to* Tr., p. 265]  Dr. Atcher concluded that the Claimant would be limited in completing complex tasks due to his low I.Q. and functional illiteracy.  [Tr., p. 265]  In addition, the physician stated that Dixon "would not respond well to the usual pressures of the work environment due to increased anxiety when around the general public and crowds."  [*Id.*]  However, Dr. Atcher noted that the prognosis was "good" and that anti-anxiety and back medications might help. [*Id.*]  Dixon also argues that the ALJ failed to account for the opinions of treating medical providers, who determined that Dixon suffered from chest pain and dizziness as a result of his chronic anxiety.  [Record No. 9, p. 7, *referring to* Tr., pp. 266−337, 348−524]

---

[1]     The ALJ also determined that Dixon had an alcohol-abuse impairment; however, he determined that it was non-severe.  [Tr., pp. 18−19]  Because Dixon does not challenge the ALJ's determination with regard to that impairment, the Court will not address the severity of the alcohol abuse.  *See Moore v. Comm'r of Soc. Sec.*, 573 F. App'x 540, 543 (6th Cir. 2014) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.") (quoting *United States v. Stewart*, 628 F.3d 246, 256 (6th Cir. 2010)).

- 7 -

In discussing Dixon's anxiety, the ALJ concluded that he had only a "mild limitation" in daily activities, social functioning, concentration, persistence, and pace.  [Tr., p. 19]  With respect to Dr. Atcher's conclusions, the ALJ noted that the physician did not perform an I.Q. test on Dixon.  [*Id.*]  Further, the ALJ highlighted Dr. Atcher's opinion that Dixon could perform well on simple tasks and that Dixon's Global Assessment Functioning ("GAF") score was 70, indicating mild symptoms or some difficulty in social or occupational functioning, but generally good functioning.  [*Id.*, *referring to* p. 265]  Moreover, the ALJ commented on Dr. Atcher's objective findings, which showed that Dixon had intact long-term memory, logical and goal-directed thoughts, and no obsessions or compulsions.  [*Id.*, p. 19, *referring to* p. 265]

Additionally, the ALJ discussed the Claimant's self-report, which revealed that he could do some household chores and socialize with his "drinking buddies."  [Tr., p. 19]  Although some non-examining sources determined that Dixon experienced "moderate" limitations due to his anxiety, the ALJ discounted their opinions because the objective evidence of record did not support them.  [*Id.*]

Contrary to Dixon's assertion, the ALJ referenced adverse findings, thoroughly discussing Dr. Atcher's opinion.   Dr. Atcher's mere diagnosis of borderline I.Q. and generalized anxiety disorder did not support a finding that either of those two conditions was severe.   *See Higgs*, 880 F.2d at 863.   Although Dr. Atcher noted that Dixon would experience difficulty with complex tasks, he was not limited in completing simple tasks.  [Tr., p. 265]  Further, the Claimant's difficulties around "crowds" might not even come into play during a normal workday.  [*Id.*]  As a result, it appears that Dr. Atcher's opinion is

actually consistent with ALJ Kayser's determination that Dixon's mental impairments were non-severe.[2]

Further, the ALJ properly discounted the non-examining state agency psychological opinions because they were not supported by the objective medical evidence—*i.e.*, Dr. Atcher's findings. *See* 20 C.F.R. § 416.927(c)(4). [Tr., p. 19, *referring to* pp. 89−91] In addition, the non-examining source opinions were internally inconsistent. *See* 20 C.F.R. § 416.927(c)(3). For example, psychologist Mary Thompson noted that Dixon had fair long-term memory, good short-term memory, a fair mood, good concentration, a cooperative attitude, and logical, goal-directed thoughts, yet she concluded that Dixon's anxiety resulted in moderate difficulties in maintaining social functioning, concentration, persistence, and pace. [Tr., pp. 83−84]

However, the ALJ erred in failing to address the opinion of nurse practitioner Lisa Caldwell, who recorded chest pain and dizziness resulting from the anxiety condition. [*See* Tr., pp. 266−337, 453−474.] Nurse practitioners are considered "other sources" under the regulations and are not entitled to the same controlling weight to which acceptable medical sources are entitled. *See* 20 C.F.R. § 416.913(d)(1); *Cruse*, 502 F.3d at 541 (citing S.S.R. 06-03P, 2006 WL 2329939, at *5–6 (Aug. 9, 2006)). In *Cruse*, the court stated in dictum that the ALJ erred by failing to give "any degree of specific consideration" to the nurse practitioner's functional assessments. 502 F.3d at 541; *see also Davila v. Comm'r of Soc. Sec.*, 993 F. Supp. 2d 737, 758 (N.D. Ohio 2014) (remanding where ALJ failed to provide an

---

[2]    To the extent Dixon would claim that his borderline I.Q. was a severe impairment, the Court notes that the ALJ was entitled to discount Dr. Atcher's opinion on that issue because he did not actually perform I.Q. testing. *See* 20 C.F.R. § 416.927(c)(3). Moreover, the Claimant has waived such an argument. *See Moore*, 573 F. App'x at 543.

explanation why he assigned little weight to treating nurse practitioner opinions).[3]   In other words, the ALJ should have provided "some basis" for why he was rejecting that opinion. *See Cruse*, 502 F.3d at 541.

"[I]t is unnecessary for the ALJ to address every piece of medical evidence." *Phillips v. Comm'r of Soc. Sec.*, No. 1:07-cv-675, 2008 WL 4394274, *6 (W.D. Mich. Jul. 2, 2008) (citing *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534–35 (6th Cir. 2001)) (ALJ's failure to discuss practical nurse's testimony did not constitute reversible error).   However, "[c]ourts are not at liberty to speculate on the basis of an administrative agency's order." *Hyatt Corp. v. Nat'l Labor Relations Bd.*, 939 F.2d 361, 367 (6th Cir. 1991).   In *Wilson v. Colvin*, the court concluded that the ALJ's failure to address a nurse practitioner's opinion was not harmless because the court could "neither substitute its own reasoning nor the Commissioner's proposed arguments for [the] omission."   No. 3:13-CV-84-TAV-CCS, 2014 WL 619713, *6 (E.D. Tenn. Feb. 18, 2014).

Here, ALJ Kayser failed to discuss nurse practitioner Caldwell's opinion and findings.   Because he did not give any specific consideration to her notes regarding Dixon's anxiety, he erred.   *See Cruse*, 502 F.3d at 541; *Davila*, 993 F. Supp. 2d at 758.   Even though

---

[3]      *See also Harthun v. Comm'r of Soc. Sec.*, No. 1:07-cv-595, 2008 WL 2831808, *7 (W.D. Mich. Jul. 21, 2008) (remanding where ALJ failed to consider the opinions of a mental health counselor and nurse practitioner).   *But see Mullins v. Colvin*, No. 3:14-CV-01757, 2015 WL 1472017, *8 (N.D. Ohio Mar. 31, 2015) (explaining that "the ALJ had no burden to analyze" the nurse practitioner's opinion); *Mitchell v. Comm'r of Soc. Sec.*, No. 13-10178, 2014 WL 1230036, *7 (E.D. Mich. Mar. 25, 2014) ("The ALJ is under no obligation to explain the weight given to a nurse practitioner's opinion or give good reasons for why the opinion was discounted.").   *Mullins* is distinguishable because the court in that case was "satisfied that the ALJ at least considered the relevant evidence" from the nurse practitioner, meaning substantial evidence supported the ALJ's determination.   2015 WL 1472017, at *8.   Likewise, *Mitchell* is distinguishable because the ALJ in that case actually discussed the nurse practitioner's opinion but merely failed to assign any weight to it.   2014 WL 1230036, at *7.

there are "shortcomings and inconsistencies" concerning Caldwell's findings, the error is not harmless because the Court cannot weigh the evidence.[4]  *See Wilson*, 2014 WL 619713, at *6.  With no reasoning to evaluate, the Court cannot determine whether substantial evidence supports the ALJ's conclusion that Dixon's anxiety was non-severe.  *See id.*  Consequently, the Court will remand the case to the ALJ for him to consider the nurse practitioner's findings in evaluating the severity of Dixon's anxiety.[5]

      **B.**    **RFC**

      Dixon also argues that the ALJ erred in determining his RFC.  First, he seems to assert that the ALJ failed to accord proper weight to examining source opinions regarding his mental impairments, such as anxiety.  [Record No. 9, p. 7]   Second, he challenges the ALJ's alleged failure to set forth the weight assigned to consultative examiner Dr. Monderewicz's opinion regarding his physical impairments.  [*Id.*, p. 9]   After a review of the record, the Court finds one of these arguments to be persuasive.  Specifically, the ALJ's failure to include any evaluation of the mental impairments in his RFC analysis is fatal.  Consequently,

---

[4]     For example, Caldwell's opinions relied heavily on the Claimant's subjective complaints. [Tr., p. 270]  Additionally, although she noted Dixon's chest pains and dizziness, she also stated that he demonstrated "appropriate mood and affect" and that his anxiety was "better controlled" since starting medication.  [*Id.*, p. 276]

[5]     Some of the records from the Kentucky River Foothills Development Council indicate that other sources examined Dixon, such as Advanced Practice Registered Nurse ("APRN") Michelle Kiser.  [Tr., p. 305]  The case law suggests that the ALJ should consider her opinion, as well, where it is relevant.  *See, e.g.*, *Lupton v. Colvin*, No. 1:15-CV-1068, 2016 WL 451359, *7 (N.D. Ohio Jan. 12, 2016) (reasoning that the ALJ "sufficiently explained" why she gave an APRN's opinion "little weight").  This is not to say that the ALJ must examine all "other source" opinions.  However, where Dixon references a multitude of records from the Kentucky River Foothills Development Council that ALJ Kayser failed to address with respect to Dixon's mental health conditions [Tr., pp. 266–337, 348–524], the Court must remand so that the ALJ can consider those records.

- 11 -

the Court will also remand the case to the ALJ with regard to that error.  With respect to the other issue raised by the Claimant, the ALJ applied the proper legal standard, and his findings are supported by substantial evidence.

"RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis."  S.S.R. 96-8p, 1996 WL 374184, at *1 (July 2, 1996).  The RFC determination is a matter reserved for the ALJ.  *See* 20 C.F.R. § 416.920(f).  In making this determination, the ALJ considers the medical evidence, non-medical evidence, and the claimant's credibility.  See 20 C.F.R. § 416.945(a)(3), (c); *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 417 (6th Cir. 2011).  An ALJ's RFC finding will be upheld where it is supported by substantial evidence.

In determining a claimant's RFC, the ALJ must consider all impairments, "even those that are not severe."  20 C.F.R. § 416.945(e); S.S.R. 96–8p, 1996 WL 374184, at *5.  In *Katona*, the district court reversed and remanded where the ALJ failed to discuss the claimant's mental impairments in the RFC finding, even though the ALJ had thoroughly discussed them in the severity determination.  2015 WL 871617, at *6−7 (addressing disability benefits ("DIB") context).  The court reasoned that the analysis at step two did "not provide the Court with a basis to infer that Plaintiff's mental impairments, either singly or in combination with Plaintiff's other impairments, generated no work-place restrictions or limitations."  *Id.* at *7; *see also Singleton v. Comm'r of Soc. Sec.*, 137 F. Supp. 3d 1028, 1034 (S.D. Ohio 2015) (applying *Katona* to SSI context).

Likewise, in *Patterson v. Colvin*, even though the ALJ distinguished the analyses at steps two and four, the district court reversed and remanded because the ALJ failed to

discuss the non-severe mental impairments in formulating the RFC. No. 5:14cv1470, 2015 WL 5560121, *5 (N.D. Ohio. Sept. 21, 2015) (addressing SSI context). The court reasoned that it was "at best, unclear whether the ALJ considered the cumulative effect of plaintiff's non-severe mental impairments when formulating the RFC." *Id.* at *4.

Both *Katona* and *Patterson* addressed the substantial evidence standard, concluding that an "ALJ's failure to adequately explain how an impairment affects an individual's RFC may constitute reversible error" even when supported by substantial evidence. *Katona*, 2015 WL 871617, at *7; *see also Patterson*, 2015 WL 5560121, at *2 ("Even when there is substantial evidence, however, a decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.") (quoting *Rabbers v. Comm'r of Soc. Sec. Admin.*, 582 F.3d 647, 651 (6th Cir. 2009)) (internal quotation marks and citation omitted).

### 1. Mental Health

Dixon claims that the ALJ failed to accord proper weight to Dr. Atcher's and nurse practitioner Caldwell's opinions regarding the mental impairments affecting his RFC. [Record No. 9, p. 7] Although the ALJ at least discussed Dr. Atcher's findings in determining the severity of Dixon's anxiety, he failed to mention either of the opinions in his RFC determination. The language indicating that he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence" is merely boilerplate that does not demonstrate he truly considered the

mental impairments.  *See Katona*, 2015 WL 871617, at *6 n.3 (discussing exact language).  [Tr., p. 20]

Further, while the ALJ differentiated between the criteria for the severity determination and the mental RFC assessment, explaining that the RFC analysis "reflects the degree of limitation the undersigned [] found in the 'paragraph B' mental function analysis," such boilerplate language does not cure the fact that the ALJ did not actually conduct a proper RFC analysis.  *See Patterson*, 2015 WL 5560121, at *4 (quoting exact language and addressing SSI context); *see also Garcia v. Comm'r of Soc. Sec.*, 105 F. Supp. 3d 805, 810−11 (S.D. Ohio 2015) (addressing DIB context).  [*Id.*, p. 19]   Because there is no discussion of whether Dixon's anxiety impairment contributed to his inability to perform substantial gainful work, remand on this issue is necessary.  *See Patterson*, 2015 WL 5560121, at *5.

### 2.     Physical Health

Dixon also asserts that the ALJ failed to properly evaluate his physical limitations in determining his RFC.  In particular, Dixon claims that the ALJ erred by improperly weighing the opinion of examining physician Dr. Monderewicz.  [Record No. 9, p. 9]  The ALJ determined that Dr. Monderewicz's opinion was "not entitled to great weight" because it was not supported by her own objective findings.[6]  [Tr., p. 20]  First, the ALJ noted the subjective complaints Dixon provided to the physician.  [*Id.*; *referring to* pp. 348−49]   Next, he highlighted the fact that a Magnetic Resonance Imaging ("MRI") of the lumbar spine showed nerve root compression and an X-ray of the left knee showed DJD.  [*Id.*, p. 20, *referring to* p.

---

[6]      Thus, contrary to the Claimant's assertion, the ALJ set forth the weight assigned to her opinion.

344]  Subsequently, the ALJ discussed Dixon's limited range of motion and mild tendonitis in the left shoulder, as well as his positive straight leg raising tests with the lower extremities. [*Id.*, p. 20; *referring to* pp. 343−44]

However, the ALJ also commented on Dixon's normal grip strength, normal examination of the knees and hands, normal motor strength at 5/5 in the upper extremities and right lower extremity, motor strength at 4/5 in the left lower extremity, and normal gait and balance.  [*Id.*, pp. 20−21, *referring to* pp. 342−43]  Further, ALJ Kayser discussed the fact that Dixon had no inflammation in his knees, and no complaints of pain with his right upper extremity.  [*Id.*, p. 21, *referring to* p. 342]

Ultimately, Dr. Monderewicz concluded that "[p]rolonged sitting, standing and walking as well as bending, stooping, squatting, lifting and carrying are limited."  [*Id.*, p. 344]  Additionally, she determined that "prolonged kneeling and crawling" and "[h]eavy pushing and pulling" would be limited.  [*Id.*]  Finally, the physician concluded that activities would "generally be limited" by the frequency of Dixon's headaches.  [*Id.*]

As an initial matter, the Court notes that the ALJ's RFC assessment is not entirely inconsistent with Dr. Monderewicz's opinion.  For example, the ALJ incorporated kneeling, crawling, pushing, and pulling restrictions into the RFC finding.  [*Id.*, p. 20]  Further, Dr. Monderewicz's opinion was rather vague.  For example, difficulties with "prolonged" sitting, standing, and walking may not result in very restrictive limitations in the workplace.  [*Id.*, p. 344]  And "limited" bending, stooping, squatting, lifting, and carrying may not translate into specific functional limitations that should be included in an RFC.  [*Id.*]

- 15 -

In any event, the ALJ was entitled to accord less weight to the examining physician's opinion because it was not supported by her own findings.  *See* 20 C.F.R. § 416.927(c)(3); S.S.R. 96-2p, 1996 WL 374188, *1 (July 2, 1996); *Hathaway v. Comm'r of Soc. Sec.*, 238 F.3d 421 (table), 2000 WL 1800484, *8 (6th Cir. Nov. 28, 2000); *Marlin v. Comm'r of Soc. Sec.*, 108 F.3d 1377 (table), 1997 WL 112410, *1 (6th Cir. Mar. 12, 1997).  Regarding Dixon's knees, while Dr. Monderewicz noted positive straight leg raising tests, she also found that Dixon had no inflammation in his knees and normal motor strength in his right lower extremity.  [Tr., p. 342]  In addition, the Claimant did not have difficulty sitting or standing in her office.  [*Id.*, p. 341]  With respect to Dixon's back/shoulder, although the physician noted a limited range of motion in the left shoulder, she also determined that Dixon's tendonitis was only "mild," and that he had normal motor strength in the upper extremities.  [*Id.*, pp. 343−44]

Further, the ALJ was entitled to discount Dr. Monderewicz's opinion because it was contradicted by other medical opinions in the record.  *See* § 20 C.F.R. 416.927(c)(4), (e)(2)(i); *Norris v. Comm'r of Soc. Sec.*, 461 F. App'x 433, 439 (6th Cir. 2012).  For instance, state agency physician Dr. Douglas Back gave an opinion resembling the ALJ's RFC assessment.  [Tr., pp. 85−89]  Likewise, state agency consultant Tevis Blanton determined that Dixon's physical limitations were less restrictive than Dr. Monderewicz determined them to be.  [*Id.*, pp. 68−70]  Moreover, because Dr. Monderewicz's opinion relied heavily on Dixon's subjective complaints, the ALJ could accord it less weight.  *See Tate v. Comm'r of Soc. Sec.*, 467 F. App'x 431, 433 (6th Cir. 2012)*; Smith v. Comm'r of Soc. Sec. Admin.*, 564 F. App'x 758, 764 (6th Cir. 2014); *see also Keeler v. Comm'r of Soc. Sec.*,

- 16 -

511 F. App'x 472, 473 (6th Cir. 2013).  The ALJ properly evaluated the opinion evidence regarding the Claimant's physical impairments when determining Dixon's RFC.

## IV.

ALJ Kayser erred in his assessment of the severity of the Claimant's anxiety because he did not discuss nurse practitioner Lisa Caldwell's findings.  Further, he failed to consider Dixon's mental impairments in his determination of Dixon's RFC.  Therefore, substantial evidence does not support the ALJ's conclusion that Dixon was not disabled from August 1, 2010, through the date of the administrative hearing.  Accordingly, it is hereby

**ORDERED** as follows:

1.      Plaintiff Cecil Dixon's Motion for Summary Judgment [Record No. 9] is **GRANTED**, in part, to the extent that he seeks a remand for further administrative proceedings.  To the extent he seeks an award of benefits, the motion is **DENIED**.

2.      Defendant Carolyn W. Colvin's Motion for Summary Judgment [Record No. 10] is **DENIED**.

3.      The decision of Administrative Law Judge Ronald M. Kayser is **REMANDED** for further administrative proceedings consistent with this opinion and pursuant to sentence four of 42 U.S.C. § 405(g).

This 5th day of July, 2016.



Signed By:

*Danny C. Reeves*  DCR

**United States District Judge**

- 17 -